Corey JEMINE, et al., Plaintiffs,

v.

Raven P.D. DENNIS, III, individually and d/b/a Cake Man Raven Confectionary, Cake Man Raven, Inc. d/b/a Cake Man Raven Confectionary and Cakeville USA Corp., Defendants.

No. 08–CV–3072 (RRM)(MDG).

United States District Court, E.D. New York.

Sept. 28, 2012.

Bruce E. Menken, Jennifer Lea Smith, Beranbaum Menken Ben-Asher & Bierman, New York, NY, for Plaintiffs.

Gregory R. Preston, Preston Wilkins & Martin, New York, NY, for Defendants.

**MEMORANDUM AND ORDER**

ROSLYNN R. MAUSKOPF, District Judge.

On July 28, 2008, plaintiff employees commenced this against their employer, Raven P.D. Dennis, III, individually and d/b/a Cake Man Raven Confectionery and Cake Man Confectionery, Cake Man Raven Inc., f/k/a and d/b/a Cake Man Raven Confectionery and Cake Man Confectionery, and Cakeville USA Corp. (collectively, "defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and New York Labor Law ("NYLL" or "Labor Law"). (Compl. (Doc. No. 1); Amended Compl. (Doc. No. 37).) On August 27, 2010, 2010 WL 3420550, the Court entered default against all defendants as to liability, based on defendants' repeated failure to adequately participate in the case.[1] (Order Adopting Report and Recommendation (Doc. No. 47).) The Court thereafter referred the case to Magistrate Judge Marilyn D. Go for a report and recommendation as to damages. (*Id.*; Order dated Nov. 12, 2010.)

On October 14, 2010, plaintiffs filed a motion for damages with a memorandum of law and supporting affidavits and exhibits. (Doc. No. 52.) Defendants filed a response to plaintiff's motion on December 28, 2010, but did not provide any evidentiary support. (Doc. No. 60.) Plaintiff's filed a reply on January 4, 2011. (Doc. No. 61.) Magistrate Judge Go held oral argument on September 30, 2011, which was attend-

---

1. Defendants were uncooperative in the course of discovery and settlement discussions; the Magistrate Judge ultimately granted a motion to withdraw made by defendants' counsel, based on his clients purported failure to respond to the attorney's almost daily communications and to pay his fees; and defendants failed to appear at several scheduled conferences before the Magistrate Judge in this case. (Report & Recommendation (Doc. No. 46) at 2–4.)

ed by counsel for both plaintiffs and defendants. (*See* Minute Entry for Proceedings held 9/30/2011.) On September 11, 2012, Judge Go issued a report and recommendation ("the R & R"). (Doc. No. 65.)

Judge Go recommends that plaintiffs[2] be awarded damages of $316, 862.91 against the defendants as follows: (1) damages for unpaid wages, overtime pay and liquidated damages under the FLSA and the New York Labor Law in the total amount of $225,277.06; (2) prejudgment interest of $36,798.85 to plaintiffs and at the rate of $16.35 per day from October 1, 2012 until entry of judgment; (3) attorneys' fees of $53,375.75; and (4) costs of $1,411.25. (R & R at 394.) Judge Go breaks out the awards by plaintiff in Appendix A to the R & R. (Doc. No. 65–1.) Objections to the R & R were due on or before September 28, 2012, and defendants timely filed objections to the R & R on that day. (Doc. No. 66.)

When reviewing an R & R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party objects to an R & R, "the court is required to conduct a *de novo* review of the contested sections." *Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991). However, where objections consist of "conclusory or general arguments, or simply reiterate[ ] the original arguments," or are merely an "attempt to engage the district court in rehashing of the same arguments set forth in the original petition," the Court reviews for clear error. *DiPilato v. 7–Eleven, Inc.,* 662 F.Supp.2d 333, 339 (S.D.N.Y.2009).

The objections filed here are not only reiterate the arguments made by defendants before the magistrate judge in opposition to the motion for default judgment and damages, they are identical—word for word, and even including the errors in numbering the relevant paragraphs. *Compare* Def. Objections to the R & R (Doc. No. 66) *with* Def. Response to Motion for Damages (Doc. No. 60). Indeed, it appears that defendants merely uploaded as objections the very document they submitted to the magistrate judge in opposition to plaintiffs' motion. As such, the Court reviews the R & R for clear error, and finding none other than with respect to a mathematical calculation,[3] adopts the R & R in its entirety.

**2.** Plaintiffs James Hand, Elaine Li, Oludare Adeyeni, Reginald Grey and Tremayne Punter filed consent forms as plaintiffs, but did not file submissions to recover damages. (R & R at fn1.) No damages are awarded to these plaintiffs.

**3.** The Court has adjusted the final award reflected in Appendix A of the R & R (Doc. No. 65–1) for three minor calculation errors. Regular wages owed for Cherone Cook are $1,400 higher. ($8.75/hr × 40hrs × 42 wks = $14,700, not $13,300. $14,700 − the amount he was paid ($8,385 + $4,328.50) = $1,986.50. *See* R & R at 382–83.) Cherone Cook's overtime wages are $301.88 higher. (5.75hrs × $13.125 × 42wks = $3,169.69, not $2,867.81. *See* R & R at 382.) Carl Darnley's overtime wages are $862.30 lower. ($12,699.80 + $18,066.30 = $30,765.84, not $31,766.10. Overtime wages owed = ($71.15/wk × 52wks) + ($79.05/wk × 66wks) = $8,917.10. *See* R & R at 383–84.) When the changes are factored into the interest and liquidated damages calculations, in the same way that Judge Go did them, the following chart reflects the proper figures for plaintiffs Cook and Darnley, as well as the totals. Appendix A of the R & R is hereby amended a follows in accordance with these adjustments:

| Plaintiff | OT / Wages Owed | Interest Owed | NYLL Lq. D. | FLSA Lq. D. | Total Owed |
|---|---|---|---|---|---|
| Cherone Cook | $3,169.69/ $1,986.50 | $ 910.50 | $ 1,289.05 | $ 3,169.69 | $ 10,525.43 |
| Carl | $8,917.10/ | $10,580.57 | $ 7,691.53 | $ 8,917.10 | $ 57,955.30 |

## CONCLUSION

Accordingly, it is hereby ORDERED that plaintiff's motion for default judgment and damages (Doc. No. 42) is GRANTED. Judgment shall enter against Raven P.D. Dennis, III, individually and d/b/a Cake Man Raven Confectionery and Cake Man Confectionery, Cake Man Raven Inc., f/k/a and d/b/a Cake Man Raven Confectionery and Cake Man Confectionery, and Cakeville USA Corp. in total amounts as follows: (1) damages for unpaid wages, overtime pay and liquidated damages under the FLSA and the New York Labor Law in the total amount of $225,731.99; (2) prejudgment interest of $37,454.41 to plaintiffs and at the rate of $16.69 per day from October 1, 2012 until entry of judgment; (3) attorneys' fees of $53,375.75; and (4) costs of $1,411.25. The total award shall be broken down in favor of each plaintiff as reflected in Appendix A to the magistrate judge's R & R (Doc. No. 65–1) as modified herein.

The Clerk of Court is directed to enter judgment accordingly. As this Order disposes of all parties and claims, the Clerk of Court is directed to close this case.

SO ORDERED.

## REPORT AND RECOMMENDATION

MARILYN D. GO, United States Magistrate Judge.

Plaintiffs commenced this action on July 28, 2008 against defendants RAVEN P.D. DENNIS, III, individually and d/b/a CAKE MAN RAVEN CONFECTION-ERY and CAKE MAN RAVEN INC., f/k/a and d/b/a/ CAKE MAN RAVEN CONFECTIONERY and CAKE MAN CONFECTIONERY, and CAKEVILLE USA CORP. alleging violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, asserting claims under the New York Labor Law ("NYLL" or "Labor Law"). As a result of the defendants' failure to prosecute by not communicating with both counsel and the Court, the Honorable Roslynn R. Mauskopf entered default against all defendants as to liability and referred the case to me for a report and recommendation on the appropriate damages. *See* Order dated August 27, 2010 (ct. doc. 47).

After review of submissions from both the plaintiffs [1] and defendants and consideration of their arguments at a hearing held, I respectfully recommend that the Court award plaintiffs damages as set forth more fully below.

## FACTUAL BACKGROUND

The following facts are based on the uncontested allegations in the plaintiffs' amended complaint and declarations of plaintiffs which will be discussed in detail below. Defendant Dennis is the founder and owner of a bakery business known as "Cake Man Raven Confectionary" and the owner and majority shareholder of corporate defendant Cake Man Raven, Inc. and Cakeville U.S.A. Amended Complaint ("Am. Compl.") at ¶¶ 11–12. Defendants operate a bakery in Brooklyn, New York, selling ornate and specialty cakes, and thus engage in the production of goods for commerce. *Id.* ¶¶ 13, 25. Defendants employed plaintiffs to perform various bakery-related tasks, including "taking orders, baking and icing cakes, cleaning up, [and]

| Darnley | $21,849.00 | | | | |
|---|---|---|---|---|---|
| Total | $69,655.14/ $60,760.50 | $37,454.41 | $32,603.91 | $62,712.44 | $263,186.40 |

1. Plaintiffs James Hand, Elaine Li, Oludare Adeyeni, Reginald Grey and Tremayne Punter filed consent forms but have not filed any submissions to recover damages.

transporting baked goods within the City of New York." *Id.* ¶ 14. While employed by defendants, plaintiffs often worked in excess of forty hours per week, but were either paid their regular wage rate or not at all for the overtime hours. *Id.* ¶ 17.

Plaintiffs have each submitted a signed and sworn declaration in support of their motion for default judgment and have supplemented their declarations with time sheets, payroll records and punch cards to the extent they were produced by defendants in discovery. However, the records are incomplete. In their respective declarations, plaintiffs describe the number of hours they regularly worked per week, the salary or hourly rate they were promised by defendants, and the amount they actually received from defendants. *Id..* Plaintiffs seek unpaid wages, liquidated damages, prejudgment interest, and attorneys' fees and costs. They calculate damages based on their recollections and the limited documentary evidence that is available. Decl. of Jennifer Smith dated October 14, 2010 ("10/14/10 Smith Decl.") (ct. doc. 54) ¶ 5. After entry of default, defendants appeared through counsel to contest plaintiffs' allegations, making legal arguments through counsel's affidavit but not submitting any documentary evidence. I respectfully recommend that judgment be entered against defendants in the amounts described in detail below.

## DISCUSSION

### I. Governing Legal Standards

In deciding whether a default judgment should be entered following entry of default, a court may accept all well-pleaded allegations in the unanswered complaint as true but must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981) ("[A]

district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action.") It is for the court to "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Leider v. Ralfe,* 2004 WL 1773330, at *7 (S.D.N.Y.2004) (quoting *In re Indus. Diamonds Antitrust Litig.,* 119 F.Supp.2d 418, 420 (S.D.N.Y. 2000)).

A defendant's default also does not constitute an admission of allegations pertaining to the amount of damages. *See Finkel v. Romanowicz,* 577 F.3d 79, 83 n. 6 (2d Cir.2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992)). A default merely establishes that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. *See Greyhound,* 973 F.2d at 159. The movant need prove "only that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Id.* If the facts are sufficient to establish liability as to the asserted claims, the court must then conduct an inquiry to determine the amount of damages to a "reasonable certainty." *Credit Lyonnais Secs. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir.1999) (quoting *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)). The moving party is entitled to all reasonable inferences from the evidence it offers. *See Romanowicz,* 577 F.3d at 84; *Au Bon Pain,* 653 F.2d at 65 (citing *TWA, Inc. v. Hughes,* 308 F.Supp. 679, 683 (S.D.N.Y.1969)). In determining the amount of damages, the court may require an evidentiary hearing or rely on detailed

affidavits or documentary evidence. *See Chun Jie Yin v. Kim,* 2008 WL 906736, at *2 (E.D.N.Y.2008) (collecting cases); Fed. R.Civ.P. 55(b)(2).

## II. *Liability*

### A. *Fair Labor Standards Act*

■■■ Congress enacted the FLSA in an effort to "protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas–Best Freight Sys. Inc.,* 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (quoting 29 U.S.C. § 202(a) (footnote omitted)). The remedial statute applies to all "employers," which Congress defines broadly to include "any person acting directly or indirectly in the interest of an employer in relation to the employee." 29 U.S.C. § 203(d). To claim FLSA coverage, an employee must demonstrate either that he was "engaged in commerce or in the production of goods for commerce," or that his employer was "an enterprise engaged in commerce or in the production of goods for commerce." *Id.* §§ 206(a), 207(a)(1). Employees seeking damages for wage and overtime violations of the FLSA must raise claims within two years of a non-willful violation, or within three years of a willful violation. *See id.* § 255(a).

■■■ Plaintiffs bring this action pursuant to Section 207 of the FLSA, which requires an employer to pay any employee who works in excess of forty hours during a workweek a premium for the overtime hours "at a rate not less than one and one-half times the regular rate at which he is employed." *Id.* § 207(a)(1). Employers who violate this provision "shall be liable to the employee or employees affected in the amount of ... their unpaid overtime

compensation ... and in an additional equal amount as liquidated damages." *Id.* § 216(b). The fact that an employer pays wages above the statutory minimum set by Congress is not a defense to an employer's non-payment of overtime compensation. *See Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 42, 65 S.Ct. 11, 89 L.Ed. 29 (1944).

In addition, plaintiffs allege that defendants failed to comply with Section 211(c) of the FLSA, which requires non-exempt employers to "make, keep and preserve ... records" of their employees with respect to "wages, hours, and other conditions and practices of employment" for a certain period of time. 29 U.S.C. § 211(c). A detailed description of the record-keeping requirements are set forth in 29 C.F.R. § 516.2(a)(1)-(12). Pursuant to Section 215(a)(5) of the FLSA, it is unlawful for an employer to violate any of these record-keeping provisions. *See* 29 U.S.C. § 215(a)(5).

■■■ Plaintiffs allege in their complaint: (1) that they "worked for Defendants taking orders, baking and icing cakes, cleaning up, transporting baked goods within the City of New York and other tasks related to bakery work;" (2) that defendants were "enterprises engaged in commerce and/or the production of goods for commerce;" (3) that plaintiffs were also "engaged in commerce and/or the production of goods for commerce;" (4) that defendants failed to "pay [plaintiffs'] wages due and owing for work performed;" (5) that plaintiffs "typically worked in excess of forty hours per week;" (6) that plaintiffs were "either paid the same rate of pay for each and every hour he or she worked ... in excess of forty hours per week, or were not paid at all for hour[s] worked in excess of forty hours per week;" (7) that plaintiffs are "not exempt from receiving overtime

pay under the FLSA;" (8) that defendants "were aware that [p]laintiffs typically worked in excess of forty hours per week;" and (9) that defendants "willfully failed to pay [p]laintiffs overtime compensation ...." *See* Am. Compl. ¶¶ 14–15, 17–18, 25–26, 33. Plaintiffs also allege that defendants "failed to keep appropriate and accurate payroll and time records as required by federal law." *Id.* ¶ 27.

Plaintiffs state in their respective declarations that they often worked more than forty hours per week without overtime compensation. *E.g.*, Declaration of Asgar Muhammad ("Muhammad Decl.") (ct. doc. 54–3) ¶¶ 5–6; Decl. of Jose Rivera ("Rivera Decl.") (ct. doc. 54–9) ¶¶ 5–6. According to plaintiffs, defendant Dennis also admitted that he paid employees who worked more than forty hours a week at their regular wage rate for the overtime hours. Declaration of Jennifer Smith dated January 4, 2011 ("1/4/11 Smith Decl.") (ct. doc. 61) at ¶ 26 (quoting Deposition of Raven P.D. Dennis 94:18–22, 95:6–9, June 8, 2009 [2]). This Court finds that the undisputed allegations in the complaint and the default submissions form a sufficient basis for establishing defendants' liability under the FLSA for violations of the overtime provisions and record-keeping requirements.

### B. *New York Labor Law*

██ The New York Labor Law mirrors the FLSA in most aspects, including its wage and overtime compensation provisions. Like the FLSA, the Labor Law requires that employers provide time-and-a-half compensation for their employees' work hours exceeding forty per week, and adopts the same methods used by the FLSA for calculating overtime wages.

N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2 (2011). The Labor Law also requires that employers establish and maintain complete and accurate records for their employees who fall under the Labor Law's wage protections. *See* N.Y. Lab. Law §§ 195, 661; N.Y. Comp. Codes R. & Regs. tit. 12, § 138–3.1 (specifying content of employer's records).

██ Unlike the FLSA, the NYLL imposes a longer statute of limitations for bringing claims: whereas aggrieved employees must bring claims within two to three years under the FLSA depending on whether the violation was willful, employees have six years after the alleged violation to raise claims under the NYLL. 29 U.S.C. § 255(a); N.Y. Lab. Law § 663(1), (3). New York state also "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of annual sales." *Chun Jie Yin*, 2008 WL 906736, at *10. The New York Labor Law also expressly provides that employees are entitled to recover all unpaid wages. N.Y. Labor Law § 198(3); *Chun Jie Yin*, 2008 WL 906736, at *6; *Jowers v. DME Interactive Holdings, Inc.*, 2006 WL 1408671, at *9 (S.D.N.Y.2006).

Section 663 of the Labor Law expressly authorizes an employee to sue his or her employer to recover unpaid wages otherwise due to him or her under the statute. N.Y. Lab. Law § 663(1). Applying the same reasoning used in the FLSA analysis to the state claims, this Court finds that the undisputed allegations in the complaint and default submissions are sufficient to impose liability on defendants under the NYLL overtime and record-keeping provisions. *See Debejian v. Atl. Testing Labs.*,

---

**2.** Although plaintiffs did not provide the pertinent portions of the transcript of Defendant Dennis' deposition that they cite, defendants do not dispute the accuracy of the plaintiffs' references.

*Ltd.*, 64 F.Supp.2d 85, 87 n. 1 (N.D.N.Y. 1999) (finding New York Labor Law provisions "substantially similar to the federal scheme" such that its analysis of federal law would apply equally to claims brought under the FLSA and New York law).

## III. *Damages*

### A. *Recoverable Damages*

Plaintiffs who successfully claim violations of section 207 of the FLSA are entitled to "their unpaid overtime compensation" and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). If the violation is deemed to be "willful," plaintiffs are further entitled to liquidated damages under New York Labor Law in the amount of "twenty-five percent of the total amount of wages found to be due." N.Y. Lab. Law § 198(1–a) (2008).

■■■■ Generally, an employee-plaintiff under the FLSA "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *superseded on other grounds by* The Portal–to–Portal Act of 1947, 29 U.S.C. § 251 *et seq.* Given the statute's remedial purpose and its broader public policy goals, a plaintiff can meet this burden "through estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir.2011); *see Park v. Seoul Broadcasting Sys. Co.*, 2008 WL 619034, at \*7 (S.D.N.Y.2008); *Chan v. Sung Yue Tung Corp.*, 2007 WL 313483, at \*24 (S.D.N.Y.2007); *Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 335 (S.D.N.Y.2005). As the Supreme Court recognized in *Anderson*, "employees seldom keep … records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy." 328 U.S. at 687, 66 S.Ct. 1187. Furthermore, it is the employer who has the statutory duty to "keep proper records of wages, hours … and who is in position to know and produce the most probative facts concerning the nature and amount of work performed." *Id.; Kuebel*, 643 F.3d at 362.

■■■■ Where, as here, the employer has failed to maintain accurate and complete employment records, the plaintiff-employee only needs to submit "sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir.1997) (quoting *Martin v. Selker Bros.*, 949 F.2d 1286, 1296–97 (3d Cir. 1991)). "An employee's burden in this regard is not high." *Kuebel*, 643 F.3d at 362. The burden then shifts to the employer to come forward with any evidence to either show "the precise amount of work performed," or to "negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687–88, 66 S.Ct. 1187. If the employer fails to produce such evidence, the court may award damages to the employee, even though the result be only approximate. *Id.* at 688, 66 S.Ct. 1187. "In the absence of rebuttal by defendants," *Chen v. Jenna Lane, Inc.*, 30 F.Supp.2d 622, 624 (S.D.N.Y.1998), or "where the employer has defaulted, [as here, the employees'] recollection and estimate of hours worked are presumed to be correct," *Pavia v. Around the Clock Grocery, Inc.*, 2005 WL 4655383, at \*5 (E.D.N.Y.2005); *see Harold Levinson Assocs., Inc. v. Chao*, 37 Fed. Appx. 19, 20 (2d Cir.2002). The Labor Law imposes a higher burden on employers who fail to maintain the appropriate records, requiring that they "bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." N.Y. Lab. Law § 196–a.

Plaintiffs have each submitted a sworn declaration containing information as to rates of pay and estimates of hours worked based on their recollection. In addition, each plaintiff provided time sheets, punch cards and/or payroll records, to the extent they are available, to support their allegations. These supporting documents, which were produced by defendants, are admittedly incomplete and contain inconsistencies with each other as discussed below. Plaintiffs' counsel utilized the plaintiffs' declarations and testimony and the records from defendants to calculate the hours worked by each plaintiff and the wages owed by defendants to them. *See* Declaration of Jennifer Smith ("Smith Decl.") (ct. doc. 54); Declaration of Christine Clark ("Clark Decl.") (ct. doc. 56). In doing so, counsel relied on the declarations and deposition testimonies of the plaintiffs, but did not rely on the same types of documents or the same methodology in determining damages for all the plaintiffs. As more specifically discussed below as to each plaintiff, I find that plaintiffs have provided a sufficient and reasonable basis for determination of damages, particularly in the absence of any admissible evidence disputing the approach used by plaintiffs. Given the limited wage records available, I also find, that for the most part, plaintiff utilized a reasonable methodology in calculating damages.

The number of hours claimed by plaintiffs are based on plaintiffs' declarations, deposition testimonies, sign-in sheets and punchcards. The claimed hourly rates are based almost exclusively on their declarations and testimony which sometimes conflict with the rates in the payroll records. Plaintiffs often rely on the payroll records that defendants supplied to plaintiffs as evidence of the wages actually paid. *See* Clarke Decl., Ex. 3.

Defendants dispute the plaintiffs' recollections of their hours worked, arguing in their memorandum of law that plaintiffs could not specify which weeks they worked over 40 hours or which days they were not properly compensated for their work. Preston Decl. ¶¶ 11–20. However, defendants' contention that plaintiffs should be able to recall in detail their work hours from several years ago is unrealistic and directly contrary to the Supreme Court's decision in *Anderson*. Recognizing that an employee's burden of proof under the FLSA should not be an "impossible hurdle, the Supreme Court warned that a court should not "penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *See* 328 U.S. at 687, 66 S.Ct. 1187. To do so would serve to "allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act." *Id.* Having failed to maintain and produce appropriate hourly records, defendants "cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with [the FLSA's record-keeping provisions]." *Id.* at 688, 66 S.Ct. 1187; *see also Reich v. Waldbaum, Inc.*, 833 F.Supp. 1037, 1048 (S.D.N.Y.1993) (rejecting defendant's argument that plaintiff's calculations lack accuracy).

Defendants' next argue that plaintiffs' evidence contains internal inconsistencies. Specifically, defendants point to certain hours indicated in the sign-in sheets and punch cards which do not always conform to the hours reflected in the declarations and in the deposition testimonies. For example, Rivera declares that he "worked, on average, between 42 and 43 hours per week," but the attached time sheets, albeit incomplete, show only one week in which he worked over 40 hours. Rivera Decl.

¶ 5. However, the time sheets are often incomplete and could not, by themselves, serve as a basis for determining damages, as further discussed below.

Defendants also argue that some of the plaintiffs in their declarations contradict their own deposition testimonies. For example, Jemine states in his declaration that he "regularly worked between 40 and 60 hours per week," whereas he testified at his deposition that he "worked 60 hours, 70 hours, sometimes 80, 90" hours. *Compare* Decl. of Corey Jemine ("Jemine Decl.") (ct. doc. 56–8) ¶ 6, *with* Dep. of Corey Jemine 4:12–15 (ct. doc. 56–12). However, as discussed below, in calculating damages, plaintiff relied on the lower figures. There are inconsistencies between plaintiffs' declarations and their testimonies do not "negative the reasonableness of the inference to be drawn from [plaintiff's] evidence." *Anderson,* 328 U.S. at 688, 66 S.Ct. 1187. Any deviation from their respective original declarations only indicates that plaintiffs could not recall with certainty their hours worked. This alone is not sufficient to discredit their testimony.

Last, defendants point to payroll records reflecting plaintiffs' wages, which contradict plaintiffs' testimony. However, the payroll records are sometimes incomplete for the relevant time periods and it is often unclear what time period the payroll records encompass. Defendants provide no explanation regarding the records. The records also reflect that certain plaintiffs worked longer weekly hours than reflected on their declarations or for a longer time period than certain plaintiffs claimed they worked. Thus, drawing all reasonable inferences in the plaintiffs' favor, I generally credit plaintiffs' recollection as to the length of the time they worked, their hourly rate, the number of hours worked and wages paid as reflecting reasonable approximations of average hours worked and pay received.

To the extent that the hours set forth in the plaintiffs' declarations are higher than the hours recorded in the available punch cards, plaintiffs have addressed the discrepancy by taking an average of the two sets of numbers, and using this conservative estimate of hours in calculating damages.[3] Where available, the estimates for a particular period are based on the punch cards. Where punch cards are unavailable for a particular period of employment, statements from plaintiffs' declarations are used. This Court finds that this method of averaging over the course of several years is reasonable and appropriate given the sparse record available. Furthermore, plaintiffs testified that they often worked additional overtime at holidays and for special projects which are not reflected in their estimates. *E.g.,* Bibi Decl. ¶ 9. To the extent that some plaintiffs sometimes did not work as many hours as determined under plaintiffs' averaging method, the overestimation for those weeks is offset by the extra hours they worked during holidays and special projects that were uncompensated. In fact, this Court find that plaintiffs have used an approach which has generally yielded a conservative estimate of the average weekly hours based on plaintiffs' testimony and documentary evidence.

On the other hand, this Court does not agree with plaintiffs' reliance on payroll records to determine the wages actually paid. The payroll records for most of the plaintiffs are incomplete and do not cover the plaintiffs' entire work period. Thus,

3. In addition, the notations for the punch cards show that the hours worked per day shown on the punch cards were consistently rounded down resulting in a lower number. *See, e.g.,* ct. doc. 56–2 at 4 (time sheets for Shannan Daisley).

wages reflected in those records may be less than the wages actually paid for all the pay periods. In those instances where the plaintiffs state that they were paid for all hours worked at their regular hourly rate, I calculate damages only for the amount of the unpaid overtime. Where plaintiffs produced W–2 forms to establish the amount of wages paid, I accept those forms since the had been prepared by defendants pursuant to their legal obligations.

In light of plaintiffs' credible testimony and defendants' failure to come forward with any concrete and substantial evidence rebutting plaintiffs' reasonable claims, this Court makes the following recommendations based, in large part, on plaintiffs' estimates of their hours to calculate damages.

### B. *Determination of Damages*

#### 1. *Regular Wages*

Plaintiffs are entitled to the full amount of their unpaid wages under the Labor Law, which requires payment of all unpaid wages. *See* N.Y. Lab. Law § 198(3); *Chun Jie Yin,* 2008 WL 906736, at *6; *Jowers v. DME Interactive Holdings, Inc.,* 2006 WL 1408671, at *9 (S.D.N.Y.2006). Plaintiffs describe numerous occasions on which they did not receive any compensation for work performed. *E.g.,* Decl. of Asghar Muhammad (ct. doc. 54–3) ¶ 8. I find plaintiffs' claims for unpaid wages reasonable based on their sworn declarations and testimonies, and sufficient to establish entitlement to the amounts claimed.

#### 2. *Overtime Wages*

Plaintiffs seek compensation for unpaid overtime work under both the FLSA and the Labor Law and are entitled to relief available under either statute. *See Wong v. Hunda Glass Corp.,* No. 09–CV–4402, 2010 U.S. Dist. LEXIS 62653, 2010 WL 2541698, at *2 (S.D.N.Y. June 23, 2010).

This Court will determine damages only under the Labor Law, which has a six-year statute of limitations, in order to provide redress for the earliest of plaintiffs' claims for unpaid work, which arose on July 1, 2004. N.Y. Lab. Law § 663(1), (3); Decl. of Walden Thomas ("Thomas Decl.") (ct. doc. 54–11) ¶ 2.

Plaintiffs have calculated the amount of overtime pay owed to each employee by multiplying the number of estimated overtime hours by one and one-half of the hourly rate they were paid by defendants. In determining the overtime hours, plaintiffs largely rely on their recollection of hours worked, supplemented by information reflected in available, but incomplete, punch cards and time sheets. Defendants contest the accuracy of plaintiffs' calculations as to hours worked but only through the argument of their counsel; they have not produced any persuasive evidence to rebut the reasonableness of inferences drawn from plaintiffs' testimony and declarations. The incomplete payroll and time records submitted were obtained in discovery by plaintiffs earlier in this litigation before defendants defaulted. Critically, defendants have not disputed plaintiffs' basic allegation that they were not properly compensated for their work, or that they worked more than 40 hours in any given week. *See* Preston Decl. ¶¶ 6–9.

Plaintiffs submitted declarations estimating the weekly hours each worked. Where there were some payroll and time records available that plaintiffs found to be accurate, plaintiffs utilized the incomplete information in the records to estimate the hours worked. For example, Bibi estimates that she regularly worked more than 80 hours per week. *See* Decl. of Bibi Batool ¶ 5. Based on her sworn deposition testimony that she worked seven days per week, this is the equivalent of 11.4 hours per day. Dep. of Bibi Batool at 7:18–20

(ct. doc. 55–14). However, the time sheets submitted for Bibi reveal that for pay periods for which there is documentation, only half indicate hours in excess of 10 hours per day. Clarke Decl., Ex. 4(ii). Accordingly, plaintiffs' counsel calculated the wages owed by taking the average of the hours worked as reflected on the time sheets to estimate the hours worked for those weeks without time sheet documentation.

After carefully examining the records produced, the plaintiffs' declarations and other submissions, this Court finds that plaintiffs' counsel reasonably use different approaches to estimate hours since, for the most part, plaintiffs have used available information from both plaintiffs' own sworn statements and documents produced by defendants. In fact, some of the defendants' records are inconsistent, as more fully discussed below. For example, Cherone Cook's name does not appear on any of the time sheets attached to the declarations of other employees covering the same time period he worked. However, his name is reflected in payroll journals and defendants have not disputed that he worked for them. Although this Court finds that plaintiffs properly utilized different approaches in calculating hours worked, I have not followed plaintiffs' methodology in every instance where another approach appeared to yield a more accurate result. For example, this Court did not follow plaintiffs' use of payroll records to determine how much defendants paid a plaintiff since the payroll records are incomplete.[4] Also, some of plaintiffs' calculations are simply incorrect. The amount of damages this Court recommends as to each plaintiff and methodology used is set forth below.

*Determination of Hourly Wage.*

In order to calculate overtime wages owed, the court must first determine the "regular rate" received by plaintiffs. *See* 29 U.S.C. § 207(a)(1). The regular rate is defined in the implementing regulations "as the hourly rate actually paid the employee for the normal nonovertime workweek for which [they are] employed." 29 C.F.R. § 778.108. The regulation also makes clear that this regular rate "must be drawn from what happens under the employment contract." *Id.*

Plaintiffs who are compensated solely on the basis of a single hourly rate are classified as "hourly rate" employees under 29 C.F.R. § 778.110, and determination of overtime pay is straightforward: the number of hours worked in excess of 40 hours is multiplied by half the respective hourly rates of each plaintiff. *Id.* § 778.110.

For Plaintiffs employed solely on the basis of a weekly salary, the hourly wage is computed by dividing the salary by the numbers of hours the employee is expected to work per week. *Id.* § 778.113. When the fixed salary compensates for hours that fluctuate from week to week, the regular rate will similarly vary depending on the hours worked in a particular week. The regular rate for "fluctuating hour" employees is determined by dividing the number of hours worked in a particular workweek by the salary. *Id.* § 778.114.

*Determination of Overtime Pay.*

The Court must then calculate overtime pay by multiplying the number of hours worked in a week beyond 40 by the overtime rate, which is one-half of the regular rate. *See* 29 C.F.R. § 778.110(a). This

---

**4.** Because of the incompleteness of the payroll journals and lack of other explanation, it is not clear what time periods are covered. Since some of the records for earlier periods are for consecutive weeks, it may be that the records are weekly compilations. However, some of the later records appear to be bimonthly.

Court adjusted plaintiffs' estimates as to their overtime hours worked and the resulting calculations of unpaid overtime wages based on these hours are set out in Appendix A filed herewith.

### C. *Individual Plaintiffs' Damages*

Because the terms and circumstances of employment were different for each plaintiff and the extent of available supporting documentation varied markedly, different methods were used to calculate each plaintiff's damages. 10/14/10 Smith Decl. ¶ 8.

### *Batool Bibi*

Bibi worked for defendants from April 1, 2007 to June 15, 2008 performing various forms of manual labor. Bibi Decl. ¶¶ 2–3. In her declaration, Bibi states that she was promised an hourly rate of $10 for her work but that defendants instead paid her a flat amount every two weeks. *Id.* ¶¶ 4, 6. Bibi also testifies that she regularly worked more than 80 hours per week, and also worked extra hours around holidays. *Id.* ¶¶ 5, 9.

Plaintiffs divide Bibi's employment period into two segments based on the reduction in Bibi's hours from February 5, 2008. Clarke Decl. ¶ 15. For the 44 week period from April 1, 2007 to February 5, 2008, plaintiffs rely on the incomplete sign-in sheets and Bibi's testimony that she worked seven days a week to arrive at an estimate of 82.1 hours worked per week. *Id.* ¶¶ 17–20. Bibi's statements of the long hours she worked are corroborated, in part, by defendants' incomplete employment records. The time records show that she worked nine consecutive days from December 9 through December 20, 2007. *See* ct. doc. 55–10 at 6–14. The average number of hours on the time sheets for the

first eight days[5] was 12.97 hours. The payroll records show she was paid $1,400 for the period ending December 31, 2007, corroborating Bibi's deposition testimony that she was paid $700 per week. *See* ct. doc. 55–7 at 18. The available records for other days reflect that Bibi worked 9 to 13 hours each day, yielding an average of 12.63 hours per day. Because the records indicate that Bibi took some days off, plaintiffs calculated damages based on a 6.5 day work week. This Court finds that plaintiffs' calculation of Bibi's earnings and the amount of the damages owed to be reasonable. It is based on the contracted hourly rate of $10 per hour multiplied by an average work week of 82.1 hours during this period, yielding a conservative estimate based on available information. Because Bibi should have been paid a total of $1,031.50[6] each week ($400 for 40 hours regular work and $631.50 of overtime (42.1 overtime hours × $15/hr.)), but was paid only $700 per week, defendants underpaid her $331.50 each week, or $14,586.00 for this 44 week period.

For the period from February 5, 2008 to June 15, 2008, Bibi testified that her weekly schedule was reduced to around 60 hours and her pay reduced to $600 per week. Clarke Decl. ¶ 27; Bibi Dep. at 30. Plaintiffs calculated damages based on the incomplete time records which reflected that Bibi worked an average of 9.45 hours per day. However, plaintiffs calculated her hours using a six day work week because the records indicated that Bibi took three days off during this time period, for an average of 56.7 hours per week. *Id.* at ¶¶ 28–30. Again, this Court finds plaintiffs' approach to be reasonable but notes that plaintiffs miscalculated Bibi's weekly

---

**5.** The time sheet for December 20, 2007 did not have a signout time for Bibi. This was the case with respect to a number of entries by a number of different employees.

**6.** Plaintiffs incorrectly used $1,031.05.

earnings to be $850.50. Her weekly earnings for 56.7 hours should have been $650.50 each week ($400 for 40 hours of regular work and $250.50 of overtime (16.7 hours × $15/hr.)). According to the payroll records, Bibi was paid $12,000 during this period, but the payroll records are incomplete. Since Bibi testified that she was paid only $600 per week and did not claim that she was unpaid for any weeks, she is owed $50.50 per week for the unpaid overtime, or $1,010.00.

In sum, I find that Bibi is owed a total of $15,596.00 in overtime wages.

### Cherone Cook

Cook worked for defendants from May 14, 2007 to February 29, 2008 performing various types of manual labor. Decl. of Cherone Cook ("Cook Decl.") (ct. doc. 55–19) ¶¶ 2–3. In his declaration, Cook states that defendants never told him his hourly rate, but he believes his rate to be $8.75 per hour. *Id.* ¶ 4. He also states that he regularly worked between 35 and 60 hours per week, and that he worked one overnight shift at least one night each week. *Id.* ¶¶ 5, 7.

Due to the limited time sheets available, plaintiffs reasonably use an average of 45.75 hours worked per week based on Cook's recollection to calculate his damages. Clarke Decl. ¶ 38. Using Cook's claimed hourly rate of $8.75, Cook should have been paid $16,167.81 in wages for his 42 weeks of employment, consisting of $13,300 of base pay ($8.75/hr. × 40 hrs. × 42 weeks) plus $2,867.81 for overtime (5.75 hrs. × $13.125 × 42 weeks). Plaintiffs also reasonably relied on Cook's statement that he was paid $500 every two weeks for the first six weeks of his employment and $765 every two weeks until November 1, 2007. The correct calculation for the amount that he was paid is $8,385 for those 12 pay periods ($500 × 3 + $765 × 9). Clark Decl. ¶¶ 39, 42–43. According to the payroll records for the periods ending November 15, 2007 to February 29, 2008, which appear to be complete for this limited period, Cook received $4,328.50.[7] Thus, Cook is entitled to damages of $3,454.31 ($16,167.81–$8,385–$4,328.50) for unpaid wages.

### Shannan Daisley

Daisley states that she worked for defendants from June 1, 2005 to August 14, 2005 icing and decorating cakes at a rate of $7 per hour. Decl. of Shannan Daisley ("Daisley Decl.") ¶¶ 2–4. In her declaration, Daisley testifies that she regularly worked between 35 and 50 hours per week but was paid her regular rate of pay for all hours worked. *Id.* ¶¶ 5–6.

Based on Daisley's statements that she typically worked between five and six days a week, plaintiffs calculate her damages by using a conservative estimate of 5.5 days worked per week and 7.98 hours per day, to arrive at a total of 43.89 hours worked per week for 13 weeks. Clarke Decl. ¶ 46. However, the 10 time cards produced by defendants and attached to Daisley's declaration, which cover most of the weeks that Daisley claims she worked, indicate that Daisley worked more than 40 hours for only *seven* of ten weeks. Based on the hours indicated on the time records, which this Court has separately added, this Court finds that Daisley worked a total of 32.19 overtime hours for the following 7 weeks with the amount of overtime indicated in parentheses: 6/1/05 (0.08 hrs.), 6/13/05 (3.55 hrs.), 6/20/05 (3.85 hrs.),

---

**7.** Plaintiffs incorrectly calculated the amount reflected in the payroll records as $3,720. *See* Clarke Decl. at ¶ 42. In this instance, I rely on the seemingly complete payroll records for a relatively short time period and in the absence of any other evidence as to the amount paid to Cook from November 15, 2007 to February 29, 2008.

6/27/05 (3 hrs.), 7/4/05 (1.65 hrs.), 7/11/05 (18.31 hrs.) and 7/25/05 (1.75 hrs.) The average number of overtime hours per weeks is 4.6 hours. Since the time records submitted indicate that she worked overtime only 70% of the weeks, I estimate that Daisley worked overtime for only two of the three weeks for which there are no punch cards and calculate overtime based on the average number of overtime hours for the seven weeks for which there are records. In other words, she should have been paid overtime for 9 weeks for a total of 41.4 overtime hours. Because Daisley states that she was paid her regular rate for all hours worked, she is entitled to $144.90 for unpaid overtime wages (41.4 overtime hours $x$ $3.50/hr).

*Carl Darnley*

Darnley worked for defendants from February 12, 2006 to August 15, 2008 icing cakes and setting up for various events. Decl. of Carl Darnley ("Darnley Decl.") (ct. doc. 56–3) ¶¶ 2–3. In his declaration, Darnley states that he was initially paid an hourly rate of $9 but that his hourly rate was increased to $10 on February 1, 2007. *Id.* ¶ 4. Darnley further states that he regularly worked between 40 and 60 hours per week but was paid his regular rate of pay for all hours worked. *Id.* ¶ 5.

Plaintiffs calculate Darnley's damages based on his declaration, some incomplete time sheets, copies of Darnley's W2 Federal Tax Forms and payroll records provided by defendants. Clarke Decl. ¶¶ 52–54. There are no time sheets for 2006, a few for the end of 2007 and a few more for 2008. On the other hand, there are a number of payroll journals for 2006 and 2008, but only a few for 2007. Darnley's statement that his hourly rate was originally $9 and then $10 is consistent with the rate in the payroll journals, although his name does not appear in the journals until the 3/16/06 statement and his hourly rate

remained at $9 until the statement for the period ending 2/21/07. Since defendants do not dispute Darnley's start date and there may have been a delay in inputting his name into the defendants' record keeping system, this Court credits Darnley's statement that he started working on February 12, 2006 but will use February 14, 2007 as the date his hourly rate increased to $10.

In calculating damages, this Court first determines damages from February 12, 2006 through February 13, 2007, a period for which there are no time records. In light of Mr. Darnley's statement that he worked between 40 and 60 hours per week and worked 5.5 days per week and some payroll records showing he worked an average of 8.23 hours per day, plaintiffs' counsel calculate an average of 45.27 hours of work per week. *See* Clarke Decl. at ¶ 55. The overwhelming majority of the time sheets available (after February 13, 2007) indicate that Darnley worked between eight, nine or more hours per day. Thus, this Court finds that an award of damages based on the requested 45.27 hours of work each week is reasonable. Accordingly, Darnley should have been paid $431.15 for each week ($360 base pay + $71.15 overtime) that he worked during this 52 week period, for a total of $22,419.80. Because Darnley's W–2 for 2006 indicates that he was paid only $9,720 for that year, he is entitled to $12,699.80 in unpaid wages.

In calculating damages for the period beginning February 14, 2007 through the end of the Darnley's employment on August 15, 2008, this Court takes into account Darnley's statement that he had a three month hiatus from work during the summer. Thus, I calculate hours for two periods: one from February 14, 2007 through May 31, 2007 and then from September 1, 2007 through August 15, 2008. Darnley

Decl. at ¶ 2. There are no time sheets until December 8, 2007 and a number of sheets in 2008. Again, these time sheets reflect Darnley generally working more than eight hours per day. Again, I find that plaintiffs' estimate that Darnley worked 45.27 hours per week is reasonable.

Because the time sheets are sporadic, this Court adopts plaintiffs' methodology and uses 45.27 hours per work week for calculating the amount of wages Darnley should have earned. At $479.05 per week ($400 base wage and $79.05 for overtime), Darnley should have been paid $31,617.30 for the 66 weeks in this period. Since Darnley also avers that he was not paid for approximately eight months, *id.* at ¶ 8, I find he is entitled to the full amount for this period. Since his W–2 for 2007 and 2008 indicate that he was paid $13,551, he is entitled to $18,066.30. *See* Clark Decl. at ¶¶ 67, 72.[8]

For the entire period of his employment, Darnley is owed a total of $31,766.10 ($12,699.80 through 2/13/07 + $18,066.30) in unpaid regular and overtime wages.

*Corey Jemine*

Jemine worked for defendants intermittently from October 4, 2004 to June 15, 2008 performing various forms of manual labor. Jemine Decl. ¶¶ 2–3. Jemine was initially paid an hourly rate of between $8 and $10 an hour, but he was paid at an increased rate of $10 per hour beginning May 22, 2005. *Id.* ¶¶ 4–5; ct. doc. 55–4. In his declaration, Jemine states that he regularly worked between 40 and 60 hours per week but was generally paid his regular rate for all hours worked. *Id.* ¶¶ 6–7. Plaintiffs calculate damages based on Je-

mine's declaration testimony, time sheets, payroll records and W2 Federal Tax forms. Clarke Decl. ¶¶ 52–53. Plaintiffs estimate that Jemine worked 5.5 days per week and an average workweek of 46.97 hours. From review of the time sheets, Jemine generally worked 5 days per week but there were some periods when he worked six or seven days per week. Similarly while he generally worked about forty hours per week, some weeks he worked a little less than 40 hours and other weeks he worked substantially more than forty hours. Thus, I find Plaintiffs' estimate that Jemine worked an average of 46.97 hours to be reasonable.

According to a Department of Labor investigation, Jemine was owed $941 in back wages from October 17, 2004 through May 22, 2005. For the remainder of his employment, plaintiffs calculate that Jemine should have earned $504.55 per week ($10/hr. × 40 hrs. + $15/hr. × 6.97 hrs.) Subtracting 26 weeks between 2007 and 2008 that Jemine states he did not work, Jemine Decl. at ¶ 2, Jemine worked 135 weeks[9] between May 22, 2005 and June 15, 2008. Therefore, Jemine should have been paid $68,114.25. Although payroll records for the relevant time period show that Jemine was paid $38,280, Jemine's W–2 forms for 2005–2007 reflect earnings of $35,036. Since this Court accepts the W–2 tax form as reflecting the correct amount of wages paid to Jemine, he is entitled to recover $33,078.25 for unpaid overtime, plus the $941 that the Department of Labor found he was owed but was not paid. Therefore, Jemine is entitled to $34,019.25.

*Nicole Lowe*

Lowe worked for defendants from approximately September 2006 to April 2007

---

8. Although Ms. Clarke states in her declaration that the W–2 tax forms for 2007 and 2008 are attached as Exh. 7(ii), only the one for 2007 is included in the exhibit. However, this Court accepts her statement made under penalties that the form indicates that Mr. Darnley was paid $10,118 in 2008.

9. Plaintiffs' calculation is based on 136 weeks. *See* Clarke Decl. at ¶ 84.

icing and decorating cakes. Decl. of Nicole Lowe ("Lowe Decl.") ¶¶ 2–3. Lowe states she was paid at a rate of $12.50 per hour, which is corroborated by payroll records, and regularly worked between 40 and 50 hours per week. Id. ¶¶ 4–5. Lowe further testifies that she was paid her regular rate for all hours worked. Id. ¶ 6. However, Lowe also stated that she was not paid at all for the last six weeks of her employment, as well as two other weeks.[10]

Defendants produced a copy of Lowe's W2 Federal Tax form for 2007 and partial payroll records. Clarke Decl. ¶¶ 90, 92. Due to the lack of time sheets, plaintiffs rely on Lowe's declaration and payroll records to calculate damages. Id. ¶¶ 92–95. The first payroll record that includes Lowe is for the period ending November 12, 2006. However, she may have been added late and due to the incompleteness of the records, this Court credits the undisputed statements of Lowe in her declaration and recommends that damages be calculated based on Lowe's statements[11] for 32 weeks that Lowe said she worked. Based on her statement that she worked between 40 and 50 hours, this Court estimates that she worked an average of 45 hours a week and should have been paid $12.50 per hour for the regular hours she worked each week plus overtime for five hours per week or $593.75 per week ($12.50 × 40 hrs. + $18.75 × 5 overtime hrs.). Since Lowe's payroll records and W–2 form do not cover the entire period of her employment and she states in her declaration that she was paid her regular rate for all hours worked other than those weeks that she was not paid at all, I reject plaintiffs' method of using the average amount that

she was paid according to the payroll records or $392.65 per week. Lowe Decl. ¶¶ 8, 10. Thus, I recommend awarding Lowe for unpaid overtime of $750 for 24 weeks ($6.25/hr. × 5 hrs./week) and unpaid wages of $4,750 ($593.75 × 8 weeks) for a total of $5,500.

*Asghar Muhammad*

Muhammad worked for defendants from April 13, 2007 to August 16, 2008 performing various forms of manual labor. Muhammad Decl. ¶¶ 2–3. In his declaration, Muhammad states that his regular rate of pay was $8 per hour and that he regularly worked more than 70 hours per week. Id. ¶¶ 4–5. He also states that defendants paid him a biweekly wage of $1,000 regardless of the number of hours he worked in a particular week. See Reply Decl. of Jennifer Smith at ¶ 18 [12] (ct. doc. 61).

Plaintiffs calculate Muhammad's unpaid wages for three separate time periods due to the varying availability of information for each period. Smith Decl. ¶ 13. Plaintiffs use the regular rate of $8 per hour for all three periods and deduct $500 per week that Muhammad was actually paid. Id. ¶ 14.

For the period where complete time sheets are available, November 25, 2007 through December 22, 2007, plaintiffs follow the hours indicated on the time sheets, which show that Muhammad worked 168.5 overtime hours. Accordingly, he is owed $1,302 in unpaid wages for that period ($320/week × 4 weeks + $12/hr. × 168.5 overtime hours − $500/week × 4). Id. ¶ 16.

---

10. Plaintiffs did not include these eight weeks into their calculations.

11. In calculating hours, plaintiffs' counsel also rely on oral statements made by Ms. Lowe. Since the statements are not sworn and

admissible, this Court relies only on Lowe's declaration.

12. This paragraph is incorrectly denominated ¶ 16 but it is the 18th numbered paragraph in the affidavit.

For the period from December 3, 2007 through August 16, 2008 where only some time sheets are available, plaintiffs used the available time sheets to calculate the average number of hours and the average number of days Muhammad worked per week during this period to arrive at an estimated 64 hours worked per week. *Id.* ¶ 18. Based on my review of the time sheets, I calculate an average of 9.4 hours per day and approximately 6 days per week for 56.4 hours per week, yielding $571.20 of unpaid overtime each week [ ($516.80/week − $500/week) × 34 weeks) ].

For the period where no time sheets are available, April 13, 2007 through November 24, 2007, plaintiffs rely solely on Muhammad's estimate that he worked in excess of 70 hours per week and multiplied 70 hours by the number of weeks worked to calculate his unpaid wages. *Id.* ¶ 15. Considering that Muhammad worked on average 82 hours during the four weeks for which there are complete time sheets and 56.4 hours for the time period for which there are intermittent time records, I find plaintiffs' estimate that Muhammad worked an average of 70 hours per week for the remaining time period for which there are no records is reasonable. For 70 hours of work in a week, Muhammad should have been paid $680 per week ($8/hr. × 40 hrs. + 30 overtime hrs. × $12/hr.) Therefore, Muhammad is entitled to $5,940 for this time period ($680/week − $500/week × 33 weeks)

In sum, Muhammad is owed a total of $7,813.20 in unpaid overtime wages for all three periods.

### Maureen O'Mara

O'Mara worked for defendants from approximately February 2006 to April 2006 icing and decorating cakes at a promised regular rate of $15 per hour. Decl. of Maureen O'Mara ¶¶ 2–4. O'Mara states that she typically worked between 60 and 72 hours per week but was paid approximately $600 for the entire period of her employment. *Id.* ¶¶ 5–6.

Because there are no time sheets available for O'Mara, plaintiffs rely solely on O'Mara's estimate of her weekly hours to arrive at an average of 65 hours per week. Smith Decl. ¶¶ 22–23. Although not disputing O'Mara was an employee, defendants challenge O'Mara's hourly rate as being too high, but provide no evidence to rebut her statements or the fact she had different job skills as an icer and decorator. Based on plaintiffs' conservative estimate of her hours and her hourly rate of $15, O'Mara is owed $13,350 in unpaid regular and overtime wages [ (40 hours × $15/hr. + 25 overtime hours × $22.50/hr. − $600) × 12 weeks].

### Jose Rivera

Rivera worked for defendants for approximately six months in 2005 performing various forms of manual labor. Rivera Decl. ¶¶ 2–3. In his declaration, Rivera states that he generally worked between 42 and 43 hours a week, but was paid at his regular rate of $8 per hour for all hours worked. *Id.* ¶¶ 4–6.

Although there are some time sheets available for Rivera, plaintiffs do not rely on them and instead use an average of 42.5 hours per week to calculate damages. Smith Decl. ¶ 26. Plaintiffs argue that Rivera does not believe the time sheets to be accurate, despite Rivera's declaration stating the opposite. *Compare* Rivera Decl. ¶ 5, *with* Smith Decl. ¶ 26. In fact, the time sheets submitted show Rivera rarely working more than forty hours per week. This Court resolves the discrepancy in favor of plaintiffs in light of the absence of sworn testimony or other contrary evidence from defendants. Accepting Rivera's estimate of weekly hours

worked and plaintiffs' representation that he was paid at his regular rate for the estimated hours worked, Rivera is owed $260 in unpaid overtime wages ($4/hr. × 2.5 overtime hours/week × 26 weeks).

### Amira Samad

Samad worked for defendants from approximately June 2005 to August 2005 performing various forms of manual labor at a rate of $8 per hour. Decl. of Amira Samad ("Samad Decl.") ¶¶ 2–4. Samad estimates that she regularly worked 52.5 hours per week and worked even more hours around special events. *Id.* ¶ 5. Despite often working over 40 hours per week, Samad states that she was paid at her regular rate for all hours worked and was not paid at all for the hours she spent working on special events. *Id.* ¶¶ 6, 8. Samad further testifies that she was not paid at all for her last week and a half of work. *Id.* ¶ 8.

Plaintiffs again claim that Samad believes her available time sheets to be inaccurate and rely on Samad's recollection instead to determine the number of hours worked in a week. Smith Decl. ¶ 31. However, Samad states in her declaration that she believes the time sheets "accurately reflect the hours [she] worked on those days." Samad Decl. ¶ 10. Of the 11 weeks of time sheets submitted, they reflect that Samad worked overtime for 5 of those weeks, only two of which show as many as 52.5 hours worked. On the other hand, many of those time sheets are virtually indecipherable. In addition, plaintiffs do not add any additional wages for the days she claims she was not paid that may not be reflected in the payroll records. Therefore, I recommend awarding Samad unpaid wages based on 50 hours per week, slightly less than her claim of 52.5 hours per week. Accordingly, Samad is owed $520 in unpaid overtime wages ($4/hr. × 10 overtime hours × 13 weeks).

### Walden Thomas

Thomas worked for defendants from July 1, 2004 to September 30, 2004, and again from July 2005 to October 15, 2005, performing various forms of manual labor. Thomas Decl. ¶¶ 2–3. Thomas was initially promised an hourly rate of $10 and worked an average of 72 hours per week in 2004. *Id.* ¶¶ 4–5. During this period, he claims he was only paid approximately $7.50 per hour for all hours worked. *Id.* ¶ 5. In 2005, Thomas still worked an average of 72 hours a week but received only $330 for the entire period of employment. *Id.* ¶ 6.

Although there are some time sheets available, Thomas claims that "[s]ome, but not all, of the attached [t]imesheets accurately reflect the hours [he] worked on the dates represented." *Id.* ¶ 10. He further states that some time sheets reflect fewer hours than he actually worked on those dates. *Id.* Here, plaintiffs credit Thomas' testimony and rely on his estimate of the 72 hours he worked per week. Smith Decl. ¶ 37. Plaintiffs also rely on Thomas' statements for the amounts defendants actually paid him. There are only 8 time sheets available, some of which are illegible as to the start and end times. In the absence of any contrary evidence I recommend adopting plaintiff's calculations. For 2004, based on Walden's estimate of 72 hours per week, the promised rate of $10.00 per hour and his having been paid $7.50 for all hours he worked, plaintiffs calculate that he is owed $4,420 ($400/week + $15/hour × 32 overtime hours − $540/week he was actually paid × 13 weeks). For 2005, Thomas is owed $12,870 ($400/week + $15/hour × 32 overtime hours × 15 weeks − $330 he was actually paid).

In sum, Thomas is owed $17,290 in unpaid wages.

### 3. *Liquidated Damages*

■ Plaintiffs seek liquidated damages under both the FLSA and the Labor Law. Section 216(b) of the FLSA provides that an employer shall be liable to any employee who is not paid overtime compensation "an additional equal amount as liquidated damages," unless the employer can demonstrate that he acted in good faith and had reasonable grounds for believing that his act or omission was not a violation of the FLSA. 29 U.S.C. §§ 216(b), 260. This additional amount serves as "compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation of the FLSA." *Herman v. RSR Secs. Servs., Ltd.*, 172 F.3d 132, 141–42 (2d Cir.1999). In contrast, liquidated damages under the Labor Law, which is equivalent to 25 percent of unpaid wages, "'constitute a penalty' to deter an employer's willful withholding of wages due." *Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 265 (2d Cir.1999) (quoting *Carter v. Frito–Lay, Inc.*, 74 A.D.2d 550, 425 N.Y.S.2d 115, 116 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 994, 438 N.Y.S.2d 80, 419 N.E.2d 1079 (N.Y.1981)).

■ Because the two awards serve fundamentally different purposes, plaintiffs may be granted both awards, provided that they sufficiently demonstrate their entitlement to each. *See Maliza v.2001 MAR–OS Fashion, Inc.*, 2010 WL 502955, at *1 & n. 4 (E.D.N.Y.2010); *Ke v. Saigon Grill, Inc.*, 595 F.Supp.2d 240, 261–62 (S.D.N.Y.2008). Whereas the FLSA places the burden on the employer to show good faith and reasonableness in his conduct through "plain and substantial evidence," *S. New England Telecomms. Corp.*, 121 F.3d at 71, the Labor Law requires plaintiffs to demonstrate that their employer acted "willfully" in violating the statute. *See* N.Y. Lab. Law § 198(1–a). Willfulness, in this context, is found

"where the employer, 'knowingly, deliberately, [or] voluntarily' disregards its obligation to pay wages." *Ayres v. 127 Rest. Corp.*, 12 F.Supp.2d 305, 309 (S.D.N.Y. 1998) (quoting *P & L Group, Inc. v. Garfinkel*, 150 A.D.2d 663, 541 N.Y.S.2d 535, 537 (2d Dep't 1989)); *see also Centeno–Bernuy v. Becker Farms*, 564 F.Supp.2d 166, 181 (W.D.N.Y.2008) ("[W]illfulness [for purposes of liquidated damages] is warranted if substantial evidence tends to demonstrate that the employer knew or should have known that it was violating the law.") (citing *Consol. Masonry Contractors, Inc. v. Angello*, 2 A.D.3d 997, 770 N.Y.S.2d 134, 136 (2d Dep't 2003)). Many courts have found that a defendant's default, in itself, may suffice to support a finding of willfulness. *See, e.g., Blue v. Finest Guard Services, Inc.*, 2010 WL 2927398, at *11 (E.D.N.Y.2010); *Dong v. CCW Fashion Inc.*, 2009 WL 884680, at *4–5 (S.D.N.Y.2009); *but see Aguilar v. E–Z Supply Corp.*, 2008 WL 905224, at *5 (E.D.N.Y.2008).

■ Here, defendants have failed to demonstrate through plain and substantial evidence that they acted reasonably and in good faith, and thus have not met their burden to avoid imposition of FLSA liquidated damages. To the contrary, defendants only argue, unpersuasively, that plaintiffs did not produce sufficient evidence to establish their entitlement to liquidated damages. Preston Decl. ¶ 21. In any event, the circumstances of this case support a finding of willfulness. Several plaintiffs complained to Dennis about not receiving overtime compensation, and at least one plaintiff was instructed to stop using time sheets entirely because he was working too many hours. *E.g.*, Dep. of Bibi Batool 7:25–8:5, (ct. doc. 55–16); Jemine Decl. ¶ 10. These facts, at a minimum, indicate that defendants knowingly and deliberately disregarded their legal

obligations to pay proper wages to plaintiffs, and are sufficient to establish defendants' liability.

Since this Court has previously found that plaintiffs are entitled to unpaid overtime, I recommend an award of liquidated damages under the FLSA in those same amounts. However, the FLSA's three-year statute of limitations for willful violations limits recovery of double compensation to plaintiffs who were employed by defendants after July 28, 2005 (three years before the July 28, 2008 Complaint filing date). The same plaintiffs are also entitled to liquidated damages under the Labor Law in the amount of 25 percent of their total unpaid wages. For overtime work that was performed prior to July 2005, which is more than three years before the Complaint was filed, I recommend awarding liquidated damages under the Labor Law only in the amount of 25 percent of unpaid overtime due.[13] *See Kopec v. GMG Constr.*, 2010 WL 3925210, at *4 (E.D.N.Y.2010) ("[f]or the period that is untimely under the federal three-year statute of limitations but timely under the state law six-year statute of limitations, the state law claim is operative"). In addi-

tion, since FLSA damages are available for unpaid overtime only, I recommend denying liquidated damages under the FLSA for unpaid regular wages.

Plaintiffs appear to have calculated liquidated damages based on a principal amount that includes prejudgment interest, resulting in higher awards than warranted under the statutes. *See* Clarke Decl. Ex. 2. This is contrary to the statutory language in both the FLSA and the NYLL, which does not incorporate prejudgment interest in calculating liquidated damages. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1), (3). Second, plaintiffs seek liquidated damages under only one statute for each employee, when recovery under both is permissible. *Chun Jie Yin*, 2008 WL 906736, at *23 ("[E]ach statute provides a separate form of liquidated damages ....."). Accordingly, I have calculated liquidated damages for plaintiffs pursuant to both the FLSA and the Labor Law.

In sum, plaintiffs are entitled to liquidated damages under the FLSA and the Labor Law as set forth in the chart below and in Appendix A filed herewith.

| Plaintiff | OT Due/ *Regular Wages Due* | NY LL Liquidated Damages | FLSA Liquidated Damages |
| --- | --- | --- | --- |
| Batool Bibi | $15,596.00 | $3,899.00 | $15,596.00 |
| Cherone Cook | $ 2,867.50/ $ *586.50* | $ 863.58 | $ 2,867.81 |
| Shannan Daisley | $ 144.90 | $ 36.23 | $ 32.20 |
| Carl Darnley | $ 9,779.40/ *$21,849.00* | $7,941.53 | $ 9,779.40 |

**13.** For example, I calculate liquidated damages for Shannan Daisley under the FLSA for only the period from July 28, 2005 to August 14, 2005. For Jose Rivera, he states that he worked for 6 months in 2005 but does not specify which months. Since the time sheets submitted for Mr. Rivera either do not indicate the dates worked or are illegible, I calculate FLSA liquidated damages for Mr. Rivera based on half the unpaid overtime for 2005. For Amira Samad, I calculated FLSA liquidated damages based on unpaid overtime for August 2005 since she states that she worked from June 2005 to August 2005. For Walden Thomas, I calculate liquidated damages under the FLSA for 11 weeks from August 2005 to October 15, 2005.

| | | | |
|---|---|---|---|
| Corey Jemine | $14,114.25/ *$19,905.00* | $8,504.81 | $14,114.25 |
| Nicole Lowe | $ 750.00/ *$ 4,750.00* | $1,375.00 | $ 750.00 |
| Asghar Muhammad | $ 7,813.20 | $1,953.30 | $ 7,813.20 |
| Maureen O'Mara | $ 6,750.00/ *$ 6,600.00* | $3,337.50 | $ 6,750.00 |
| Jose Rivera | $ 260.00 | $ 65.00 | $ 130.00 |
| Amira Samad | $ 520.00 | $ 130.00 | $ 160.00 |
| Walden Thomas | $11,620.00/ *$ 5,670.00* | $4,322.50 | $ 5,280.00 |
| TOTAL | | $32,428.45 | $63,272.86 |

#### 4. *Prejudgment Interest*

■ Plaintiffs seek prejudgment interest on unpaid wages owed to them under both the FLSA and the Labor Law. Federal courts have long recognized that prejudgment interest may not be awarded in addition to liquidated damages for violations of the FLSA. *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1064 (2d Cir.1988) (citing *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 714–16, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)). Since liquidated damages awarded under the FLSA for unpaid overtime is designed to compensate employees for delays in payment, such damages are the functional equivalent of prejudgment interest on the overtime pay and are thus barred.

■ However, the Second Circuit has also held that "[p]rejudgment interest and liquidated damages under the Labor Law are not functional equivalents" and thus may both be awarded for violations of state wage laws. *Reilly,* 181 F.3d at 265. As the *Reilly* court explained, "prejudgment interest" is meant "to compensate a plaintiff for the loss of use money," while, as discussed above, "liquidated damages under the Labor Law 'constitute a penalty.'" *Id.* (citations omitted). Because I have already found that plaintiffs' claims for unpaid overtime are compensable under the Labor Law, plaintiffs are entitled to prejudgment interest on those claims to the extent liquidated damages were not assessed pursuant to the FLSA.

■ Section 5001 of New York's Civil Practice Law and Rules governs the calculation of prejudgment interest for violations of the Labor Law. *See Pavia,* 2005 WL 4655383, at *8. Courts ordinarily apply a statutory interest rate of nine percent per annum in determining prejudgment interest under New York law. N.Y. C.P.L.R. § 5004. Section 5001(b) sets forth two acceptable methods of calculating prejudgment interest. First, interest may be calculated from "the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. § 5001(b). However, "[w]here ... damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date. *Id.* To that end, courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir.1994). Here, because plaintiffs were periodically denied wages during their term of employment with defendants, this Court agrees with plaintiffs' use of the latter calculation method. I find the midway point between when "plaintiff[s] began and ceased working for defendant[s]" as a "reasonable intermediate date" for purposes of calculating prejudgment interest.

*Pavia*, 2005 WL 4655383, at *8; *see also Liu v. Jen Chu Fashion Corp.*, 2004 WL 33412, at *5 (S.D.N.Y. Jan. 7, 2004) (adopting counsel's "midpoint of the accrual of damages" date).

However, this Court does not adopt plaintiffs' methodology of dividing up periods of employment into separate sections, and using different midpoints for each section in calculating prejudgment interest. Clarke Decl. Ex. 2. Courts in this district typically use a single midpoint. *See, e.g., Kopec*, 2010 WL 3925210, at *4 (using single midpoint); *Said v. SBS Elecs., Inc.*, 2010 WL 1270129, at *3 (E.D.N.Y.2010). The statute's clear and unambiguous language also supports use of a "single reasonable intermediate date." N.Y. C.P.L.R.

§ 5001(b). Accordingly, I have calculated the prejudgment interest amounts based on a single midpoint date for each plaintiff, which is approximately the date between plaintiffs' respective start dates and end dates of employment.

Plaintiffs are thus entitled to the following 9% prejudgment interest awards under N.Y. C.P.L.R. § 5001 on their unpaid wages, based on the period from the adjusted midpoint dates until October 1, 2012. The amounts due to each plaintiff are set out in the chart below. In addition, plaintiffs are further entitled to prejudgment interest from October 1, 2012 until entry of judgment at the daily rates set forth in the chart below.

| Plaintiff | Wages Due under NYLL | Date Range | Midpoint | No. of Days | Daily Rate | Interest Owed |
|---|---|---|---|---|---|---|
| Cherone Cook | $ 586.50 | 05/14/07–02/29/08 | 10/07/07 | 1821 | $0.14 | $ 254.94 |
| Shannan Daisley | $ 112.60 | 06/15/05–08/15/05 | 07/16/05 | 2634 | $0.03 | $ 79.02 |
| Carl Darnley | $21,849.00 | 02/12/06–08/18/08 | 05/18/07 | 1963 | $5.39 | $10,580.57 |
| Corey Jemine | $19,905.00 | 10/17/04–06/15/08 | 08/17/06 | 2237 | $4.91 | $10,983.67 |
| Nicole Lowe | $ 4,750.00 | 09/01/06–04/15/07 | 12/24/06 | 2108 | $1.17 | $ 2,466.36 |
| Maureen O'Mara | $56,600.00 | 02/01/06–04/30/06 | 03/18/06 | 2389 | $1.63 | $ 3,894.07 |
| Jose Rivera | $ 130.00 | 03/01/05–08/31/05 | 06/01/05 | 2679 | $0.03 | $ 80.37 |
| Amira Samad | $ 360.00 | 06/01/05–08/30/05 | 07/17/05 | 2633 | $0.09 | $ 236.97 |
| Walden Thomas | $12,010.00 | 07/01/04–10/15/05 | 02/22/05 | 2778 | $2.96 | $ 8,222.88 |
| TOTAL | $66,303.10 | | | | | $36,798.85 |

### D. *Attorney's Fees*

Both the FLSA and New York's Labor Law allow for an award of "reasonable" attorneys' fees. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). The amount of reasonable attorneys' fees is determined by multiplying "the number

of hours reasonably expended on the litigation" by "a reasonable hourly rate," or "a presumptively reasonable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d 182, 188–90 (2d Cir.2008); *Cham-*

*bless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1058–59 (2d Cir.1989); *see also Perdue v. Kenny A.,* 559 U.S. 542, 130 S.Ct. 1662, 1672–73, 176 L.Ed.2d 494 (2010) (discussing lodestar methodology). Plaintiffs bear the burden of proving the reasonableness of the fees sought. *See Savoie v. Merchants Bank,* 166 F.3d 456, 463 (2d Cir.1999).

■■■■■ In order to arrive at the "presumptively reasonable fee," which is the "rate a paying client would be willing to pay," courts look to the "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of IBEW,* 34 F.3d 1148, 1159 (2d Cir.1994) (citing *Blum v. Stenson,* 465 U.S. 886, 894, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). To that end, courts receive guidance from (1) rates awarded in prior cases; (2) courts' own knowledge of hourly rates charged in the district; and (3) evidence submitted by the parties. *See Farbotko v. Clinton County of New York,* 433 F.3d 204, 209 (2d Cir.2005) (citations omitted).

■■■■■ Bruce Menken, a partner who has been primarily responsible for litigating this case, requests an hourly rate of $400. Decl. of Bruce Menken ("Menken Decl.") ¶ 16. In his sworn declaration, Menken states that he is a 1986 graduate of Brooklyn Law School and has over 23 years of experience, 18 years of which he specialized in employment and civil rights cases. *Id.* ¶ 12. As a preliminary matter, courts have found that the prevailing hourly rates for partners in this district are between $300 and $400. *See Concrete Flotation Sys., Inc. v. Tadco Construction Corp.,* 2010 WL 2539771, at *4 (E.D.N.Y.2010) (collecting cases); *Luca v. County of Nassau,* 698 F.Supp.2d 296, 301–02 (E.D.N.Y. 2010); *Gutman v. Klein,* No. 03 Civ. 1570, 2009 WL 3296072, at *2 (E.D.N.Y.2009);

*Whitney v. JetBlue Airways Corp.,* 2009 WL 4929274, at *7 (E.D.N.Y.2009).

■■■■■ Additionally, "the nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate." *Arbor Hill,* 522 F.3d at 184 n. 2 (citations omitted). The nature of the work performed in this matter was relatively straightforward, particularly since the defendants defaulted. However, it is also worth noting that in a class action suit, as here, the large number of plaintiffs increase the complexity of the litigation. *Cf. Callier v. Superior Bldg. Servs.,* 2010 WL 5625906, at *6, 2010 U.S. Dist. LEXIS 140232, at *20 (E.D.N.Y. 2010), *aff'd* 2011 WL 222458, 2011 U.S. Dist. LEXIS 8299 (E.D.N.Y.2011) (recommending an hourly rate of $350 for Menken in a FLSA and NYLL case involving only two plaintiffs). In light of the aforementioned factors, this Court recommends that Menken's fees should be based on a reasonable hourly rate of $375, which is within the range of prevailing hourly rates for partners in this district. *Whitney v. JetBlue Airways Corp.,* 2009 WL 4929274, at *7 (E.D.N.Y.2009) (consolidating cases) (noting that $300–$400 per hour is reasonable for partners, and awarding $350 per hour).

■■■■■ Menken's two associates, Jennifer Smith and Christine Clarke, also worked on the instant case and request attorneys' fees at the rates of $250 per hour and $200 per hour, respectively. Menken Decl. ¶¶ 11, 18–19. Smith, a senior associate and a 2002 graduate of New York University Law School, has been practicing employment law for nearly nine years. Smith Decl. ¶ 1. Given her substantial experience and expertise, I find her compensation of $250 per hour to be reasonable. *See La Barbera v. Les Sub– Surface Plumbing, Inc.,* 2006 WL 3628024,

at \*8 (E.D.N.Y.2006) (Vitaliano, J.) (awarding $250 per hour in fees for an associate with six years of experience). Clarke is a 2010 graduate of Yale Law School who sat for the New York Bar Examination in the same year, and she requests a rate of $200. Clarke Decl. ¶¶ 1, 3. Given Clarke's limited experience, the fact she had not yet been admitted to the Bar when she worked on this case, and the prevailing rate for junior associates in this district, I recommend reducing her hourly rate to $150. *See Cho v. Koam Med. Servs. P.C.*, 524 F.Supp.2d 202, 207 (E.D.N.Y.2007) (observing in FLSA case that "[o]verall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from ... $100 to $150 for junior associates ....").

■■■■■ In reviewing a fee application for reasonableness, district courts must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. *See Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir.1994); *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir.1985). If any expenditure of time was unreasonable, courts should exclude these hours from the calculation. *See Hensley*, 461 U.S. at 434, 103 S.Ct. 1933; *Lunday*, 42 F.3d at 133. Specifically, courts should exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999). The party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir. 1983).

■■■■ Here, plaintiffs seek fees for a total of 209.27 hours (104.3 hours of work performed by Menken, 44.49 hours of work performed by Smith, and 60.48 hours of work performed by Clarke), and have provided billing records detailing the work performed and time spent in this matter. It is worth noting that Menken expended the same numbers of hours on this case as his two associates combined. Although this allocation of hours is ordinarily not appropriate given Menken's partner status and significantly higher billing rate, a portion of the time was spent by Menken prior to default in depositions, court proceedings and discovery. A review of the billing records also reveals that some of the work billed for is not the type a reasonable client would be willing to pay for. For example, Menken spent 1.5 hours speaking by telephone with plaintiffs whose claims are not included in the instant motion for damages. Menken Decl., Ex. A. Similarly, Clarke included time spent meeting with and calculating damages for some of those same plaintiffs. Clarke Decl., Ex. 1.

Because the quality and complexity of the submissions and calculations relating to plaintiffs' motion for damages following defendants' default do not reflect 209.27 hours of work, this Court finds that a reduction in fees is warranted. In doing so, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Kirsch v. Fleet Street Ltd.*, 148 F.3d 149, 173 (2d Cir.1998) (quoting *Carey*, 711 F.2d at 1146). Here, I find that a 10% deduction in the number of hours claimed is warranted. Thus, I respectfully recommend that the Court award plaintiffs' attorneys fees in the amount of $53,375.75.[14]

**14.** Menken requested $41,720 in fees. With the reduction in his hourly rate and hours,

**394**

### E. *Costs*

■ Plaintiffs request an award of $2,211.25 for various costs incurred during the course of this litigation, including expenses associated with filing the Complaint, taking depositions, and investigative services. *See* Menken Decl., Ex. B. As a general matter, a prevailing plaintiff in an action under the FLSA or New York's Labor Law is entitled to recover costs from the defendant. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). However, only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. *Moon v. Kwon*, 2002 WL 31512816, at *30–31 (S.D.N.Y. Nov. 8, 2002) (quoting *Kuzma v. IRS*, 821 F.2d 930, 933–34 (2d Cir.1987)).

■ Where there is conclusive evidence that plaintiffs filed the Complaint and took depositions, there is no such proof that the investigative services were necessary to this litigation or that the costs were in fact incurred. Accordingly, I recommend denying the amounts associated with those services and recommend a reduced award of $1,411.25 for costs.

### *CONCLUSION*

For the reasons stated above, I respectfully recommend that plaintiffs be awarded damages in the amount of $316,862.91 against the defendants as follows: (1) damages for unpaid wages, overtime pay and liquidated damages under the FLSA and the New York Labor Law in the total amount of $225,277.06; (2) prejudgment interest of $36,798.85 to plaintiffs and at the rate of $16.35 per day from October 1, 2012 until entry of judgment; (3) attorneys' fees of $53,375.75; and (4) costs of $1,411.25.

A copy of this report and recommendation will be filed and notice sent electronically to the parties on this date. Objections to the Report and Recommendation must be filed with the Clerk of Court, with a copy to the Honorable Roslynn R. Mauskopf and the undersigned, by September 28, 2012. Failure to file objections within the time specified waives the right to appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72(b).

### SO ORDERED.

September 11, 2012

this award should be $35,201.25. Smith requested $11,122.50 in fees. With the reduction of her hours, the award should be $10,010. Clarke requested $12,096.00 in fees. With the reduction in her hourly rate and hours, she should be awarded $8,164.50.